UNIVERSAL INSURANCE COMPANY, Plaintiff v. BURTON FARM DEVELOPMENT COMPANY, LLC, Defendant FIRST SPECIALTY INSURANCE COMPANY, Plaintiff v. UNIVERSAL INSURANCE COMPANY, Defendant

No. COA10-1554

(Filed 1 November 2011)

**1. Insurance—exclusion   clause—separation-of-insureds— applied separately**

Universal Insurance (Universal) had the duty to defend Burton Farms (Burton) against claims arising from a dispute between the owner of a subdivision (Burton Farms) and a company providing equipment, material, and labor for development (White). Burton's project manager was Mr. Mancuso, Universal's policy listed Mancuso Development as it's named insured, and Burton was listed as an additional insured. The separation-of-insureds exclusion clause relied upon by Universal required that the exclusion be applied separately since it referred to *the* insured rather than to *any* insured.

**2. Insurance—exclusion—construction manager—not applicable to project manager**

An insurance exclusion for injury arising from supervision of a construction project by a construction manager did not apply where the person in issue was identified as a project manager. The insurance company (Universal) did not show that "construction manager" and "project manager" were synonymous.

**3. Insurance—duty to defendant—not dependent on viable claim**

Although Universal Insurance argued that it did not have a duty to defend Burton Farms because employers are generally not liable for the acts of independent contractors, the argument went to the issue of whether Burton Farm would ultimately be found liable and whether Universal Insurance would ultimately have to pay, not to whether Universal Insurance had a duty to defend.

**4. Insurance—other insured clauses—not mutually repugnant**

"Other insurance" clauses that were identically worded were not mutually repugnant where the named insureds differed. Universal Insurance's policy provided primary coverage and the trial court properly denied Universal Insurance's motion for summary judgment.

Appeal by Universal Insurance Company from order entered 17 September 2010 by Judge Ronald E. Spivey in Forsyth County Superior Court. Heard in the Court of Appeals 25 May 2011.

*Burton & Sue, L.L.P., by Gary K. Sue and Andrea Dancy Harrell, for Universal Insurance Company, appellant.*

*Forman Rossabi Black, P.A., by Amiel J. Rossabi and Jennifer L. Reutter, for First Specialty Insurance Company, appellee; and Poyner Spruill, LLP, by J. Nicholas Ellis, for Burton Farm Development Company, LLC, appellee.*

GEER, Judge.

Universal Insurance Company appeals from an order denying its motion for summary judgment, granting First Specialty Insurance Company's motion for summary judgment, and declaring that Universal Insurance has a duty to defend Burton Farm Development Company, LLC, with respect to a complaint filed in Pamlico County Superior Court ("the underlying complaint"). Universal Insurance primarily argues that coverage sought by Burton Farm under the personal and advertising injury portion of its policy was barred by the policy exclusion for injury "done by or at the direction of the insured with knowledge of its falsity."

We agree with First Specialty Insurance and Burton Farm that given the separation of insureds provision in Universal Insurance's policy, that exclusion would only apply if the underlying complaint

alleged personal and advertising injury "done by or at the direction of" Burton Farm—as opposed to another defendant also insured under the Universal Insurance policy—with Burton Farm's having "knowledge of its falsity." The underlying complaint contains no such allegations, and, therefore, this exclusion does not preclude coverage for Burton Farm under the Universal Insurance policy.

We also agree that a second policy exclusion is likewise inapplicable and that the plain language of the policies establishes that the Universal Insurance policy provides primary coverage while the First Specialty Insurance policy provides excess coverage. We, therefore, affirm the order below.

Facts

On 5 September 2008, W.O. White, LLC ("White") filed suit against Bernard Mancuso, Jr., Mancuso Development, Inc., and Burton Farm. The White complaint contained causes of action for breach of contract, unfair and deceptive trade practices, and defamation. Subsequently, White filed an amended complaint ("the White complaint") that was substantially the same as the original complaint but added a claim for relief alleging, in the alternative, that White was entitled to recover in *quantum meruit*.

In pertinent part, the amended complaint alleged that White—which was in the business of providing equipment, material, and labor for the purpose of developing subdivisions—entered into a series of contracts with Burton Farm beginning in April 2007. The contracts called for White to perform site grading, pave roads, install storm drains, and perform work related to the installation of water lines at a subdivision owned by Burton Farm.

In April 2008, Burton Farm replaced its existing on-site manager with a new project manager, Mr. Mancuso, who was President of Mancuso Development. Mr. Mancuso, the White complaint alleged, began making unreasonable demands on White that went outside the scope of White's contracts with Burton Farm. In addition, Mr. Mancuso began a "campaign to smear the integrity of White" intended to convince Burton Farm executives that White's work was unsatisfactory and not consistent with the terms of the contracts.

The White complaint alleged that Mr. Mancuso caused Burton Farm to breach its contracts with White by bringing in other contractors to perform work that was the subject of White's contracts with Burton Farm and by withholding payments from White for work and

materials. Mr. Mancuso and Burton Farm also interfered with White's ability to complete the work necessary in order to receive the remaining sums due under the contracts and to recover retainage amounts withheld by Burton Farm pending completion of White's work.

In addition to causes of action for breach of contract and enforcement of a claim of lien asserted against Burton Farm, the White complaint alleged that Mr. Mancuso "made false, derogatory and defamatory remarks about White" and that "[t]hese slanderous and defamatory remarks, both in writing and orally, were designed to damage the reputation of White, to injure White's ability to perform under the contracts with Burton Farm, and . . . to interfere with White's ability to obtain additional work both from Burton Farm and from other developers." The amended complaint asserted that "[t]he slanderous, libelous, and defamatory remarks and statements made by Mancuso were made maliciously and with a willful and wanton intent to cause injury and harm to White." In the unfair and deceptive trade practice claim against Mancuso, White alleged, in part, that "Mancuso has fabricated information and made false statements to make it appear that the work performed by White was not in conformity with the contracts between White and Burton Farm . . . ."

At some point, Burton Farm notified Universal Insurance of the White complaint and demanded a defense pursuant to a commercial lines policy issued by Universal Insurance that listed Mancuso Development as the named insured and Burton Farm as an additional insured. Universal Insurance filed a declaratory judgment action against Burton Farm, seeking a declaration that Universal Insurance had no duty to defend the White complaint.

Thereafter, First Specialty Insurance, which insured Burton Farm as a named insured under a commercial general liability policy, was allowed to intervene in Universal Insurance's declaratory judgment action. On 8 June 2009, First Specialty Insurance filed a complaint in intervention seeking a declaratory judgment that the White complaint triggered Universal Insurance's duty to defend Burton Farm as an additional insured under the Universal Insurance policy and that the Universal Insurance policy was primary and the First Specialty Insurance policy was excess. First Specialty Insurance also sought equitable contribution and equitable subrogation from Universal Insurance for all amounts paid by First Specialty Insurance in connection with its defense of Burton Farm in the White action.

First Specialty Insurance and Universal Insurance filed cross motions for summary judgment. On 17 September 2010, the trial court entered an order denying Universal Insurance's motion for summary judgment and granting First Specialty Insurance's motion for summary judgment. Universal Insurance timely appealed from that order to this Court.

I

**[1]** Universal Insurance first contends that it had no duty, under its policy, to defend Burton Farms. Our Supreme Court has observed that "the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy." *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986). This duty to defend "is ordinarily measured by the facts as alleged in the pleadings." *Id.* "When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* An insurer is excused from its duty to defend only "if the facts are not even arguably covered by the policy." *Id.* at 692, 340 S.E.2d at 378.

In order to answer the question whether an insurer has a duty to defend, we apply the " 'comparison test,' reading the policies and the complaint 'side-by-side . . . to determine whether the events as alleged are covered or excluded.' " *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 6, 692 S.E.2d 605, 610 (2010) (quoting *Waste Mgmt.*, 315 N.C. at 693, 340 S.E.2d at 378). In performing this test, "the facts as alleged in the complaint are to be taken as true and compared to the language of the insurance policy. If the insurance policy provides coverage for the facts as alleged, then the insurer has a duty to defend." *Id.* at 7, 692 S.E.2d at 611.

Under North Carolina law, "the insured . . . has the burden of bringing itself within the insuring language of the policy. Once it has been determined that the insuring language embraces the particular claim or injury, the burden then shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Hobson Constr. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984). "Exclusionary clauses are interpreted narrowly while coverage clauses are interpreted broadly to provide the greatest possible protection to the insured." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 542-43, 350 S.E.2d 66, 71 (1986).

In this case, Universal Insurance does not dispute that the White complaint triggered coverage under the personal and advertising injury provisions in the Universal Insurance policy. The Universal Insurance policy provides coverage for personal and advertising injury arising out of one or more of the following offenses: "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]"

Notwithstanding that provision, Universal Insurance argues that no duty to defend exists because the Universal Insurance policy excludes coverage for personal and advertising injury "done by or at the direction of the insured with knowledge of its falsity." Universal Insurance contends that the allegations contained in the White complaint—that Mr. Mancuso, the named insured, "mounted a 'smear campaign' "—fit this exclusion, thus precluding any duty to defend Burton Farm.

First Specialty Insurance and Burton Farm argue, however, that the allegations regarding whether Mancuso Development knew of the falsity are immaterial because of the separation of insureds clause in the Universal Insurance policy. That clause states:

### 7. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

"[T]he vast majority of jurisdictions which have addressed the issue" have held that "a separation of insureds clause modifies the meaning of an exclusion phrased in terms of 'the insured[,]' " such that "the exclusion will only be effective if it applies with respect to the specific insured seeking coverage." *Michael Carbone, Inc. v. Gen. Accident Ins. Co.*, 937 F. Supp. 413, 418 (E.D. Pa. 1996). *See, e.g., Float-Away Door Co. v. Cont'l Cas. Co.*, 372 F.2d 701, 708 (5th Cir. 1966) ('The better reasoned cases adopt a restrictive interpretation of 'the insured' as referring only to the party seeking coverage under the policy."); *Shelby Mut. Ins. Co. v. Schuitema*, 183 So. 2d 571, 573 (Fla.

Dist. Ct. App. 1966) ("Since the adoption of the severability of interests clause in a policy which would or might apply to several insureds, the term 'the insured', as used in the exclusions and conditions of the policy, means only the person claiming coverage."); *Commercial Standard Ins. Co. v. Am. Gen. Ins. Co.*, 455 S.W.2d 714, 721 (Tex. 1970) (" 'The insured' does not refer to all insureds; rather, the term is used to refer to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage thereunder.").

In *Carbone*, the insurance policy contained a separation of insureds clause essentially identical to the one in this case, as well as an exclusion for bodily injury or property damage arising out of the use of any automobile owned or operated by "*any* insured." 937 F. Supp. at 416 (emphasis added). Applying the majority rule, the court concluded that the reference to "any" insured as opposed to "the" insured was critical in considering the impact of the separation of insured clause:

> Note the exact language. The provision excludes losses caused by an automobile operated by "*any insured*"; the clause does not say "*the insured*." The distinction is paramount. Had the automobile exclusion used the phrase "the insured," the separation of insureds clause would have altered the meaning of the exclusion . . . .

*Id.* at 420. The court, therefore, held that the plaintiff was not covered by virtue of the exclusion since the loss arose out of the use of an automobile by one of the plaintiff's employees, also an insured. *Id.* See also *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006) ("Because it is Bloomington Steel that seeks coverage here, the exclusion for bodily injury expected or intended by 'the insured' is limited to bodily injury expected or intended by Bloomington Steel itself."); *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 188 (Tex. 2002) (policy contained exclusion for bodily injury or property damage expected or intended from standpoint of "the insured"; finding that separation of insureds clause required claim to be viewed from standpoint of particular insured against whom injured party's claim is made and analyzing issue as though party sued were sole insured).

In *Penske Truck Leasing Co. v. Republic W. Ins. Co.*, 407 F. Supp. 2d 741 (E.D.N.C. 2006), the federal district court predicted that North Carolina would follow the majority rule. In that case, the policy

excluded coverage for any obligation for which the " ' "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or similar law.' " *Id.* at 747. The plaintiff in the underlying action, who was injured when falling off a truck leased by his employer, sued Penske, the lessor of the truck. *Id.* The policy included a "severability of interests" clause that required "the court to apply this exclusion separately to the insured who is seeking coverage and against whom a claim has been brought." *Id.*

The district court noted that the policy's exclusion would preclude coverage in a suit by the plaintiff against his employer, but concluded "[n]either Penske nor Penske's insurer has been or could be held liable under any worker's compensation law for the injuries inflicted upon [the plaintiff in the underlying action.] It would be illogical to conclude, in the face of an explicit direction to apply a policy 'separately to each insured who is seeking coverage,' that an additional insured receives the identical coverage as the named insured. If such were the case, the severability of interests clause would appear to be meaningless and unnecessary." *Id.* Accordingly, the court held "that the worker's compensation exclusion in [the defendant's] policy does not bar coverage for Penske where the insured against whom suit has been filed, here Penske, is not the employer of the employee in question." *Id.* at 749.

We agree with the reasoning of *Penske* and *Carbone* and adopt the majority rule. In this case, the exclusion at issue—the "knowledge of falsity" exclusion—excludes coverage for personal injury "done by or at the direction of *the insured* with knowledge of its falsity." (Emphasis added.) Since the exclusion refers to *the* insured rather than *any* insured, the separation of insureds clause requires that the exclusion be applied separately with respect to each insured. The White complaint does not allege that Burton Farm made or directed the making of any injurious statements about White with knowledge of their falsity. Consequently, the "knowledge of falsity" exclusion does not apply with respect to Burton Farm.

Universal Insurance does not address the separation of insureds clause. It asserts instead that "a party, whether an injured party or an 'additional insured', has no greater rights versus the insurer than the insured." Universal Insurance argues that the "knowledge of falsity" exclusion applies to Mancuso Development, and, therefore, Universal Insurance has no duty to defend Burton Farm because Burton Farm has no greater rights versus Universal Insurance than does Mancuso

Development. This argument cannot, however, be reconciled with the separation of insureds clause. It would, in fact, render the separation of insureds clause meaningless.

Universal Insurance, however, claims that "it is well-settled law in North Carolina that a party, whether an injured party or an '*additional insured*', has no greater rights versus the insurer than the insured." (Emphasis added.) Although Universal Insurance cites *Selective Ins. Co. v. Mid-Carolina Insulation Co.*, 126 N.C. App. 217, 484 S.E.2d 443 (1997), as its sole support for this claim of "well-settled law" regarding additional insureds, nothing in *Selective Insurance* in any way addresses the duty to defend an additional insured. That opinion has no bearing on the issues in this case.

In *Selective Insurance*, Selective had filed an action seeking a declaration that it had no duty to defend or indemnify the defendants in a negligence action that was still pending. The appellant in *Selective*—the injured party suing in the underlying action—appealed a summary judgment order entered in Selective's declaratory judgment action, concluding that Selective had no duty to indemnify or defend one of the additional insureds covered by the Selective policy. This Court expressly "decline[d] to address this case on the merits, however, because the appeal must be dismissed for lack of jurisdiction." *Id.* at 219, 484 S.E.2d at 445.

The Court concluded that it lacked jurisdiction because the appellant injured party was not an aggrieved party as her "legal rights ha[d] not been denied, nor directly and injuriously affected by entry of summary judgment in favor of Selective." The Court explained that "[a]n injured party who obtains a judgment against the insured has no greater rights against the insurer than the insured" and, therefore, "an injured party who has not yet obtained a judgment against the insured [also] has no greater rights against the insurer than the insured." *Id.* Because the individual defendant, the additional insured, had not challenged the summary judgment order, the appellant, the injured party, could not challenge it. *Id.*

Further, the Court pointed out, the appellant injured party was "in effect attempting to make a claim directly against the insurer, prior to any judgment against [the insured]." *Id.* at 220, 484 S.E.2d at 445. Under the law, however, the injured party "ha[d] no legal interest in the liability insurance policy in question unless and until she obtain[ed] a judgment against [the individual defendant] in the underlying negligence suit, and execution of that judgment [was] returned

unsatisfied." *Id.* As a result, because the injured party could not be considered an aggrieved party, the Court had no jurisdiction and dismissed the appeal. *Id.*

In short, *Selective Insurance* includes no holding or analysis relating to the rights of an additional insured under an insurance policy. We, therefore, hold that the exclusion for personal and advertising injury "done by or at the direction of the insured with knowledge of its falsity" does not preclude a duty to defend Burton Farm.

[2] Next, Universal Insurance contends that no coverage exists because the Universal Insurance policy excludes coverage for personal and advertising injury arising out of "supervision . . . done by or for you on a project on which you serve as a construction manager." Although the policy defined "you" as Mr. Mancuso, it did not define "construction manager." In support of its argument that this exclusion applies, Universal Insurance asserts only that "it is undisputed that Mancuso was acting as the construction manager on this construction site."

However, First Specialty Insurance and Burton Farm do dispute whether Mr. Mancuso was a construction manager. As they point out, the White complaint does *not* refer to Mr. Mancuso as a "construction manager." Instead, the White complaint identifies Mancuso Development as a " 'building contractor' " and Mr. Mancuso, the president, owner, and operator of Mancuso Development, as a "project manager." The White complaint contains no reference to a "construction manager."

Universal Insurance has not shown that a "construction manager"and a "project manager" are synonymous. As we are required to construe exclusions narrowly, *State Capital*, 318 N.C. at 542, 350 S.E.2d at 71, we conclude that Universal Insurance has not met its burden of showing that the "construction manager" exclusion applies to preclude a duty to defend Burton Farm in connection with acts by its project manager.

[3] Lastly, Universal Insurance argues that it did not have a duty to defend because employers are "generally not liable" for the acts of independent contractors such as Mr. Mancuso. Universal Insurance's argument goes to the issue whether Burton Farm would ultimately be found liable for any of the allegations in the White complaint and whether Universal Insurance would ultimately have to pay—not whether Universal Insurance has a duty to defend Burton Farm. As this Court explained in *Crandell v. Am. Home Assurance Co.*, 183

N.C. App. 437, 442, 644 S.E.2d 604, 607 (2007) (quoting *Waste Mgmt.*, 315 N.C. at 691, 340 S.E.2d at 377)), even though the claims against the insured in the underlying action might be groundless, that possibility does not excuse an insurer from providing a defense: "The duty to defend is not . . . dependent on the viability of the claims—'the insurer has a duty to defend, whether or not the insured is ultimately liable.' " *See also Duke Univ. v. St. Paul Fire & Marine Ins. Co.*, 96 N.C. App. 635, 638, 386 S.E.2d 762, 764 (1990) (holding insured is not required to establish ultimate liability, but only to show that facts of claim were within coverage of policy).

Universal Insurance has not, therefore, established that any of the exclusions contained in its policy apply or that any other basis exists for determining that the claims asserted against Burton Farm are not covered by the Universal policy. The trial court properly concluded that Universal Insurance had a duty to defend Burton Farm.

II

[4] Universal Insurance argues alternatively that even if it has a duty to defend, Universal Insurance's coverage provides excess coverage while First Specialty Insurance provides primary coverage. Excess insurance clauses generally provide that if other valid and collectible insurance covers the injury in question, the "excess" policy will provide coverage only for liability above the maximum coverage of the primary policy. *Horace Mann Ins. Co. v. Cont'l Cas. Co.*, 54 N.C. App. 551, 555, 284 S.E.2d 211, 213 (1981).

The Universal Insurance policy and the First Specialty Insurance policy contain identically-worded "Other Insurance" provisions:

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

. . . .

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

Thus, each policy is excess only over "other primary insurance available to *you*." (Emphasis added.) "You," as defined in the policies, "refer[s] to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."

Universal Insurance argues that these identical provisions are mutually repugnant and, therefore, should not be considered. However, while the wording of the clauses in the two policies may be identical, the effect of the application of that wording differs between the policies because of the different identity of the "Named Insured" under each policy. It is undisputed that Mancuso Development Inc. is the "Named Insured" under the Universal Policy and that Burton Farm is simply an "additional insured." Reference to "you" in the excess insurance provision of the Universal Insurance policy, therefore, refers only to Mancuso Development Inc. and not to Burton Farm. As a result, the Universal Insurance policy provides primary coverage with respect to Burton Farm.

On the other hand, Burton Farm is the "Named Insured" under the First Specialty Insurance policy. Because Burton Farm, through Universal Insurance, has other primary insurance available to it, the First Specialty Insurance coverage is excess over Universal Insurance's coverage.

Thus, the clauses are not mutually repugnant and can be applied to determine which carrier provides primary coverage. This Court reached the same conclusion in *Iodice v. Jones*, 133 N.C. App. 76, 78, 514 S.E.2d 291, 293 (1999), holding that "the 'other insurance' clauses in [that] case, although identically worded, do not have identical meanings and are therefore not mutually repugnant." The Court then noted that the effect of the clauses—referring, as in this case, to "you," which was defined by the policy as the named insured and spouse—varied when each policy's named insured was substituted for "you." As a result, the clauses were not mutually repugnant, and the Court was able to determine by applying the clauses that "GEICO's UIM coverage is 'excess' " and "Nationwide provides primary UIM coverage in this case." *Id.* at 79, 514 S.E.2d at 293.

Universal Insurance, however, asserts that in *Iodice* "this Court decided to 'read the policies as if [the mutually repugnant excess] clauses were not present' " and "therefore went on to find that, because the plaintiff was not the same 'class' of insured under both policies, *despite the fact that both policies had identical 'Other Insurance' clauses,* the Nationwide policy was primary, and the GEICO policy was excess." (Emphasis original; quoting *Iodice,* 133 N.C. App. at 78, 514 S.E.2d at 293.)

We find this description of *Iodice* inexplicable since the Court in fact expressly held that the policies were not mutually repugnant and unambiguously reached its conclusion regarding excess coverage based on the application of the "other insurance" clauses. The quotation from *Iodice* contained in Universal Insurance's brief suggesting that the *Iodice* decision supports its position came not from the analysis or holding of *Iodice,* but rather from an explanatory parenthetical included in a citation regarding the general law, *id.* at 78, 514 S.E.2d at 293: "*Onley v. Nationwide Mutual Ins. Co.,* 118 N.C. App. 686, 690, 456 S.E.2d 882, 884 ('[W]e read the policies as if [mutually repugnant excess] clauses were not present.'), *disc. review denied,* 341 N.C. 651, 462 S.E.2d 514 (1995)." Further, contrary to Universal Insurance's claim, the Court in *Iodice* did not base its holding on the "class" of the insureds. The Court only generally noted in a footnote during a discussion of a different issue that different classes of insureds may be treated differently from one another. *Iodice,* 133 N.C. App. at 79 n.3, 514 S.E.2d at 293 n.3.

*Iodice* requires us to conclude that Universal Insurance's policy provides primary coverage while First Specialty Insurance's policy provides only excess coverage. The trial court, therefore, properly denied Universal Insurance's motion for summary judgment and granted First Specialty Insurance's motion for summary judgment.

Affirmed.

Judges BRYANT and BEASLEY concur.