**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1638

MICHAEL A. SMALL, Administrator of the Estate of Bertha Autry Small, deceased,

    Plaintiff - Appellant,

v.

WELLDYNE, INC., a Florida Corporation; WELLDYNERX, INC., a Florida Corporation; EXACTUS PHARMACY SOLUTIONS, INC., a Delaware Corporation; DOES 1 THROUGH 5, inclusive,

    Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, Chief District Judge. (5:16-cv-00062-BO)

Argued: March 20, 2019                                    Decided: June 12, 2019

Before WILKINSON, HARRIS, and QUATTLEBAUM, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Wilkinson and Judge Harris joined.

**ARGUED:** Marshall B. Pitts, Jr., LAW OFFICES OF MARSHALL B. PITTS, JR., P.C., Fayetteville, North Carolina; Willie D. Gilbert, II, LAW OFFICES OF WILLIE D. GILBERT, II, Wilson, North Carolina, for Appellant. Demetrius W. Berry, BROTHERTON FORD BERRY & WEAVER, PLLC, Greensboro, North Carolina; Barry Sidney Cobb, YATES, MCLAMB & WEYHER, LLP, Raleigh, North Carolina,

for Appellees.  **ON BRIEF:**  Daniel J. Burke, BROTHERTON FORD BERRY & WEAVER, PLLC, Greensboro, North Carolina, for Appellees WellDyne, Inc. and WellDyneRx, Inc.  Suzanne R. Walker, YATES, MCLAMB & WEYHER, LLP, Raleigh, North Carolina, for Appellee Exactus Pharmacy Solutions, Inc.

------------

QUATTLEBAUM, Circuit Judge:

On November 19, 2013, Bertha Small ingested prescription medications that were sent to her by mistake. Ms. Small was accustomed to receiving medications in the mail. On the day she ingested the pills, Ms. Small received a package addressed to her home in North Carolina that contained six prescription medications. The package was similar in size and color to the packages containing the medications she normally received.

WellDyneRx, Inc. and WellDyne, Inc. (collectively referred to as "WellDyne"), operate in the growing mail-order pharmacy industry by filling prescriptions for health care plans and other pharmacies.[1] Relevant to this case, WellDyne was under a contract with Exactus Pharmacy Solutions, Inc. ("Exactus") to fill and ship prescription medication to Exactus' customers. Exactus placed an order with WellDyne to fill and ship a package of prescription medication to an Exactus customer in California. However, WellDyne mistakenly shipped that package of prescription medication to Ms. Small. The package contained the pills Ms. Small ingested.

Although the outside of the package contained Ms. Small's name and address, the label on each bottle listed the California patient's name, the California patient's

---

[1] The mail-order pharmacy industry began to develop in earnest in the 1980s. More recently, the industry has grown significantly. Online retailers have moved into the pharmacy business and many traditional brick and mortar pharmacy businesses now provide online delivery services. This trend is consistent with the multiple ways the Information Age is transforming our economy and giving rise to new legal disputes and issues. *See, e.g., Milo & Gabby LLC v. Amazon.com, Inc.*, 693 F. App'x 879, 886–88 (Fed. Cir. 2017) (addressing whether Amazon was a seller under copyright laws when the product in question was sold by a third party on Amazon's website and fulfilled by Amazon).

prescribing doctor and the name of the medication. However, Ms. Small, elderly and barely literate, did not read the labels of the bottles before taking the pills.

After ingesting the pills, Ms. Small began to experience confusion and hallucinations. A few days later, she fell and fractured her leg. She was admitted to the hospital for her leg, but stayed for almost a month. During that time, Ms. Small was treated for several other medical problems that arose during her stay. She died on January 2, 2014, approximately ten days after being discharged.

## I.

On behalf of Ms. Small's estate, her son Michael Small (we refer to the plaintiff and the decedent interchangeably as "Ms. Small") sued WellDyne and Exactus asserting claims for negligence, negligence per se and breach of the implied warranty of fitness for a particular purpose against both defendants. Ms. Small also alleged Exactus was vicariously liable for the actions of WellDyne under agency and joint venture theories.

After the close of discovery and the filing of a series of motions by the parties, the district court granted summary judgment in favor of WellDyne and Exactus as to all counts. The district court first held that Ms. Small was contributorily negligent as a matter of law which completely barred her recovery in North Carolina. The district court reasoned Ms. Small acted unreasonably by neither reading the labels on the medications nor heeding the warnings of her adult daughter, Shirley. Alternatively, the district court held that the relationship between Ms. Small taking the medication and her death was too attenuated, and thus precluded a finding of proximate cause. Also, because it granted summary judgment to the defendants, the district court denied as moot WellDyne and

4

Exactus' motions to exclude the opinions of Ms. Small's experts under Rule 702 of the Federal Rules of Evidence on proximate cause.[2]

Small timely appealed the district court's order. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## II.

We begin with a de novo review of the district court's decision to grant summary judgment in favor of Exactus and WellDyne on the issue of contributory negligence. *See Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). Summary judgment is appropriate if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a)*; Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. *Anderson,* 477 U.S. at 249. All evidence should be viewed in the light most favorable to the non-moving party. *Id.* at 261 n.2.

---

[2] As an alternative ground for granting summary judgment in favor of Exactus, the district court found that Exactus could not be held directly or vicariously liable for WellDyne's actions in shipping the wrong medication to Ms. Small. The district court granted summary judgment in favor of WellDyne on Ms. Small's claim for the breach of the implied warranty of fitness for a particular purpose. Ms. Small had previously stipulated to the dismissal of this claim as to Exactus. The district court denied Ms. Small's motion for partial summary judgment that Exactus was liable for WellDyne's actions. The district court also found Ms. Small's claim that WellDyne breached its duty to Ms. Small was moot because of the court's contributory negligence and proximate cause holdings.

Utilizing this standard, we first look to the law of North Carolina on contributory negligence.[3] Under North Carolina law, "if an issue of contributory negligence is raised as an affirmative defense, and proved, it completely bars plaintiff's recovery for injuries resulting from defendant's negligence." *Sawyer v. Food Lion, Inc.*, 549 S.E.2d 867, 869 (N.C. Ct. App. 2001). A "'plaintiff is contributorily negligent when [s]he fails to exercise such care as an ordinarily prudent person would exercise *under the circumstances* in order to avoid injury.'" *Nicholson v. Am. Safety Util. Corp.,* 488 S.E.2d 240, 244 (N.C. 1997) (emphasis in original) (quoting *Newton v. New Hanover Cty. Bd. of Edu.*, 467 S.E.2d 58, 65 (N.C. 1996)). "[T]he existence of contributory negligence does not depend on plaintiff's subjective appreciation of danger; rather, contributory negligence consists of conduct which fails to conform to an objective standard of behavior . . . ." *Smith v. Fiber Controls Corp.*, 268 S.E.2d 504, 507 (N.C. 1980).

Summary judgment is rarely appropriate for issues of contributory negligence because "the standard used in contributory negligence cases, that of reasonable care, usually requires a jury determination." *Sawyer*, 549 S.E.2d at 86970. Summary judgment is appropriate where the evidence is uncontroverted that the plaintiff failed to use ordinary or reasonable care and that failure was at least one of the proximate causes of

---

[3] Federal jurisdiction for this case is based on diversity of citizenship of the parties. *See* 28 U.S.C. § 1332. Thus, we apply the forum state's substantive laws, including its choice of law rules. *Francis v. Allstate Ins. Co.*, 709 F.3d 362, 369 (4th Cir. 2013). Under North Carolina law, tort claims are governed by the law of the state where the injury occurred, or where the tort was committed. *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988). It is undisputed that Ms. Small's injures occurred in North Carolina, and thus North Carolina negligence law applies.

the injury. *Id.* at 870. But in "'borderline cases,' fairness and judicial economy suggest that courts should decide in favor of submitting issues to the jury." *Whisnant v. Herrera*, 603 S.E.2d 847, 850 (N.C. Ct. App. 2004) (quoting *Radford v. Norris*, 327 S.E.2d 620, 621 (N.C. Ct. App. 1985)).

WellDyne and Exactus argue that the evidence establishes, as a matter of law, Ms. Small failed to use ordinary care when she took the misdelivered medication without reading the labels on the medication. The defendants contend the misdelivered package arrived after Ms. Small had already received her normal medications package from WellDyne. They note the medications were delivered in an unusual way—without a phone call in advance. The pill bottles, the defendants point out, were labeled for Exactus' customer in California, contained no identifying information as to Ms. Small or her doctors and the bottles in the second package were different in size and number to those Ms. Small normally received. Finally, according to defendants, there was no evidence that Ms. Small's doctors had prescribed or discussed any new medications. Accordingly, WellDyne and Exactus argue that there is no genuine issue of material fact as to whether Ms. Small failed to use ordinary care and thus was contributorily negligent as a matter of law.

In response, Ms. Small argues that a reasonable jury could find that she acted reasonably under the circumstances of this case. Ms. Small was a barely literate, geriatric patient who received a familiar looking package of medications from a familiar pharmacy, addressed to her. Also, Ms. Small points out that she had been prescribed some of the misdelivered medications in the past and the pills appeared similar in size

7

and shape to her regular medications. Finally, Ms. Small argues that the testimony from her experts, that she acted reasonably, created a genuine issue of material fact.

North Carolina courts have not addressed a case like this one where a plaintiff ingested misdelivered prescription medications without reading the label. Indeed, there is scarce caselaw nationwide addressing this situation. However, *Champs Convenience Stores, Inc. v. United Chemical Co., Inc.*, 406 S.E.2d 856 (N.C. 1991) involves an analogous situation. There, a store employee called the defendant chemical company asking for a cleaning product to control the dust on the grocery store's wood floors. *Id.* at 858. The defendant recommended a product and instructed the employee on how to use it. *Id.* Thirty minutes later, the defendant delivered a chemical product, but it was the wrong one. *Id.* The invoice listed the product recommended on the phone, but the label and instructions listed the actual chemical inside the container. *Id.* at 456. The employee admitted that if she had read the instructions, she would not have used the product. *Id.* But she neglected to read the instructions or the label and applied the misdelivered chemicals to the store floor. *Id.* at 858. The toxicity from the chemical rendered the groceries inedible, and the North Carolina Department of Agriculture issued an embargo for contents of the store, causing the store to close. *Id.* at 859. The store remained closed until it was sold approximately one year later. *Id.* When the store owner sued the chemical product seller seeking to recover its losses, the seller claimed the store was contributorily negligent in using the chemicals without reading the labels or the instructions. *Id.* Ultimately, the North Carolina Supreme Court held that "the evidence was insufficient to require the court to find contributory negligence as a matter of law."

8

*Id*. at 862. The court, relying on the defendant's delivery of the wrong product and the invoice listing the correct product, concluded contributory negligence was proper for the jury to decide. *Id*. at 862. In light of the similarities of *Champs* to our case, we, sitting in diversity, cannot say that as a matter of law that Ms. Small was contributorily negligent for failing to read the labels on the medications.[4]

We also note that part of the district court's reasoning for finding that Ms. Small was contributorily negligent was its factual finding that Ms. Small took the medications after being instructed not to by her adult daughter Shirley. But Shirley testified that she warned Ms. Small not to take the medicine the day after the package arrived. On the other hand, Michael David, Shirley's fiancé who lived at Ms. Small's residence, testified by affidavit that he saw Ms. Small take the misdelivered medications the same day the medications were delivered. Viewing the evidence in the light most favorable to Ms. Small, the non-moving party, a jury could reasonably conclude that Ms. Small ingested the misdelivered medications before being warned by her daughter Shirley.

For the reasons set forth above, we reverse the district court on the issue of contributory negligence.

## III.

Having considered the issue of contributory negligence, we now conduct a de novo review of whether Ms. Small presented sufficient evidence to create a genuine

---

[4] Sitting in diversity, our task is to identify the substantive law of North Carolina, not decide what it should be. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 497 (1941).

dispute of material fact that taking the misdelivered medications was the cause of her injuries and also her death. Under North Carolina law, "'[p]roximate cause is a cause which in natural and continuous sequence, unbroken by any new and independent cause, produced the plaintiff's injuries, and without which the injuries would not have occurred.'" *Webb v. Wake Forest Univ. Baptist Med. Ctr.*, 756 S.E.2d 741, 744 (N.C. Ct. App. 2014) (quoting *Lord v. Beerman*, 664 S.E.2d 331, 334 (N.C. Ct. App. 2008)). "Only when the facts are all admitted and only one inference may be drawn from them will the court declare whether an act was the proximate cause of an injury or not." *Adams v. Mills*, 322 S.E.2d 164, 172 (N.C. 1984). "[B]ecause that is rarely the case, what is the proximate cause of an injury is ordinarily a question for the jury." *Id.*

Ms. Small offered the testimony of Dr. Baker, Dr. Simonson and Dr. Chaponda[5] on this issue of the proximate cause of Ms. Small's death. These proffered experts described a chain of events beginning with the ingestion of the medications and ending in Ms. Small's death. First, they testified that Ms. Small took one or more doses of misdelivered low blood pressure medication. This medication, the experts stated, caused her to experience low blood pressure, which caused her to become confused, and subsequently led to her fall three days after taking the medications. They noted that Ms. Small suffered multiple leg fractures from the fall requiring her hospitalization. Ms.

---

[5] Before the district court, WellDyne moved to strike the affidavit of Dr. Chaponda for failing to comply with the discovery rules. The district court held the motion was moot in light of its order granting summary judgment. Because we reverse summary judgment as to WellDyne, we leave this issue for the district court to address on remand.

Small's experts testified that Ms. Small, while in the hospital, developed elevated white blood cell count, sepsis and pneumonia. These conditions, according to those experts, combined with her end stage renal disease, age and general underlying chronic condition, to produce elevated stress to her heart and ultimately cause Ms. Small to suffer a heart attack. The death certificate describes the cause of Ms. Small's death as urinary tract infection, myocardial infarction and end stage renal disease, and does not mention the medications or the fall. Nevertheless, the experts opine the medications to be the cause of her death. Dr. Baker compared the series of events leading to Ms. Small's injuries and ultimate death to a cascade or domino effect. Dr. Simonson compared the series of events to a snowball effect.

The district court held that "even considering the opinions of Drs. Baker and Simonson, the relationship between cause and effect is too attenuated such that plaintiff cannot demonstrate proximate cause." *Small v. WellDyne, Inc.*, No. 5:16-CV-62-BO, 2018 WL 2107607, at *7 (E.D.N.C. May 7, 2018). The district court stated that "Ms. Small's death on January 2, 2014, from end stage renal failure, myocardial infarction, urinary tract infection, and pneumonia was too far removed from her alleged consumption of some amount of mis-delivered [sic] medication having hypotensive effects between November 19 and November 22, 2013." *Id*.

The district court's assessment of the opinions of Ms. Small's experts may be correct. However, at this stage of the case and without first evaluating the admissibility of the expert testimony, the court's assessment results from improperly weighing the evidence. Ms. Small's expert testimony, if admissible, is evidence from which a jury

11

could conclude that Ms. Small's ingestion of the misdelivered pills was the proximate cause of her death. In light of that testimony, the district court erred in determining there was no genuine issue of material fact. Therefore, we reverse the district court on the issue of proximate cause.

IV.

Our reversal of the district court's order on the issues of contributory negligence and proximate cause, however, does not mean that the issue of summary judgment is closed. As described above, the evidence offered by Ms. Small to prove proximate cause is primarily expert opinion testimony. Without it, there is no other evidence that would create a genuine issue of material fact on causation.

WellDyne moved to exclude the testimony of Ms. Small's experts on causation below. The district court determined that motion was moot in light of its rulings on contributory negligence and proximate cause. While understandable at the time, we have reversed those rulings of the district court. Therefore, it is now appropriate for the district court to conduct an analysis on Ms. Small's proffered expert testimony pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

"[E]xpert witnesses have the potential to be 'both powerful and quite misleading.'" *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (quoting *Daubert*, 509 U.S. at 592). Given that potential, it is critical for district courts to diligently assess the admissibility of expert testimony. Under Rule 702, the trial judge has

12

a special gatekeeping obligation to make sure an opinion offered by an expert is admissible. *Nease v. Ford Motor Co.*, 848 F.3d 219, 230 (4th Cir. 2017).

We need not lay out the manner in which the *Daubert* analyses should be conducted. The law on that topic is well settled. But on the most basic level, to be admissible, an expert testimony must be of "scientific, technical or other specialized knowledge." Fed. R. Evid. 702(a). It must not be based on "belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244 (4th Cir. 1999). And it is not enough for an expert to rely on his subjective belief. *Daubert*, 509 U.S. at 590. Without testing, supporting literature in the pertinent field, peer reviewed publications or some basis to assess the level of reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true "because I say so." Thus, without drawing a conclusion or suggesting an outcome of the analysis to be conducted, this case is remanded to the district court so it can determine whether the expert opinions that Ms. Small's taking some of the misdirected medications was the cause of her injuries and death satisfy the *Daubert* standards for expert testimony.[6]

---

[6] In addition to the rulings described above, we affirm the district court on the issues of the direct and vicarious liability of Exactus and the liability of WellDyne on the issue of breach of implied warranty of fitness for a particular purpose for the reasons set forth by the district court. Also, because it is no longer moot, we remand the issue of whether WellDyne breached its duty of care as a matter of law to the district court for consideration. Finally, we deny Ms. Small's motion for transfer of the case to another district court judge as Ms. Small has not met the burden required for such a transfer. *See United States v. Guglielmi*, 929 F.2d 1001, 1007 (4th Cir. 1992), *superseded by statute on* (Continued)

## V.

In conclusion, we reverse the district court insofar as it granted summary judgment on the basis of contributory negligence and causation and we remand for the district judge to conduct a *Daubert* analysis of the expert opinions proffered by Ms. Small. We affirm the district court's order granting summary judgment to Exactus. We also affirm the district court's order granting summary judgment to WellDyne as to Ms. Small's claim for the implied warranty of a particular purpose. We remand to the district court Ms. Small's motion for partial summary judgment as to WellDyne. Last, we decline to assign the case to a different district judge.

*AFFIRMED IN PART, REVERSED IN PART AND REMANDED*

---

*other grounds,* Protect Act of 2003, Pub. L. No. 108-21, 117 Stat. 650, *as recognized in United States v. Pridgen*, 64 F.3d 147, 150 n.3 (4th Cir. 1995).