**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

No. 23-1950

─────────────

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA, an Indiana Company,

        Plaintiff - Appellee,

    v.

ADAM C. DUFFY; LYDIA DUFFY,

        Defendants – Appellants,

   and

LAWN ETC., LLC, d/b/a Corrective Landscape Services, a North Carolina limited liability company,

        Defendant.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:20-cv-00207-RJC-DCK)

─────────────

Argued:  March 19, 2025                   Decided:  June 5, 2025

─────────────

Before DIAZ, Chief Judge, GREGORY, Circuit Judge, and YOON, Jasmine H., United States District Judge for the Western District of Virginia, sitting by designation.

─────────────

Affirmed by published opinion.  Judge Gregory wrote the opinion, in which Chief Judge Diaz and Judge Yoon joined.

─────────────

**ARGUED:** Michael Doran, DORAN LAW OFFICE, Salisbury, North Carolina, for Appellants. Caroline Bergen Barrineau, Daniel E. Peterson, PARKER, POE, ADAMS & BERNSTEIN, LLP, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Bradley K. Overcash, PARKER, POE, ADAMS & BERNSTEIN LLP, Charlotte, North Carolina, for Appellee.

———————

GREGORY, Circuit Judge:

Adam and Lydia Duffy suffered severe injuries after being struck by a motorist while riding a motorcycle. Their damages totaled nearly $2,000,000, and the at-fault motorist's insurance coverage was insufficient to make them whole. The Duffys, through their landscaping business, had several underinsured motorist policies, one issued by Appellee Selective Insurance Company of South Carolina ("Selective"). This case concerns a dispute over how much coverage the Duffys are entitled to under that policy.

As explained herein, we find that the district court correctly held that Selective is only required to tender $300,000 to the Duffys. Contrary to the Duffys' assertion, North Carolina law does not require the "stacking" of their several insurance policies because the vehicles covered were not "nonfleet private passenger vehicles." The district court properly used the pleadings and the contract itself to make this conclusion, and while the Duffys did dispute these legal conclusions, they put no evidence into the record to counter the underlying facts deduced from the insurance contract that they agreed was authentic. The district court then properly applied the contract's terms to determine that Selective correctly paid the Duffys $300,000 as a function of the $1,000,000 maximum coverage limit, less the $700,000 paid by the Duffys' other insurers. Therefore, we affirm.

I.

In September 2016, a motorist struck Adam and Lydia Duffy while they rode their motorcycle in Union County, North Carolina. J.A. 6. The Duffys' injuries yielded damages of nearly $2,000,000, J.A. 297, 299, but the at-fault motorist had only $200,000

3

in insurance coverage, J.A. 7, 281. As a result, the Duffys turned to the underinsured motorist ("UIM") provisions of policies they held with four insurance carriers: Selective, Nationwide Property and Casualty Insurance Company ("Nationwide"), Progressive Southeastern Insurance Company ("Progressive"), and Southern Insurance Company of Virginia ("Southern"). *Id.* The insurers paid out based on the details of each respective policy: Nationwide paid $155,556; Progressive $388,888; Southern $155,556; and Selective $300,000, for a total of $1,000,000 in UIM payments to the Duffys. J.A. 302.

Selective's $300,000 payment—the subject of this litigation—was based on the $1,000,000 coverage limit provided by the policy less the contributions of the other three insurance companies, which totaled $700,000. *Id.* Selective argued that the Duffys' "Business Automobile" policy, J.A. 11–262, required deduction of payouts from other insurance providers. It pointed to contractual language stating that "[t]he maximum recovery under *all coverage forms or policies combined* may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis." J.A. 152 (emphasis added). In this case, that would mean the Duffys can receive a total of $1,000,000 in collective payouts across policies, J.A. 149, with Selective's $300,000 payment closing the gap to that maximum.

The Duffys disagreed, arguing that they are entitled to the full $1,000,000 cap under the Selective policy. First, they argued that North Carolina law prohibits deducting payouts from other insurance providers from coverage maximums, allowing them to "stack" the several coverage maximums across policies. J.A. 302–03. In the alternative, they argued that the contract itself did not provide a per-accident cap in coverage. *Id.*

4

Selective sued in the United States District Court for the Western District of North Carolina, seeking a declaration that it owed only $300,000 and attaching the disputed insurance policy to the complaint. *See* J.A. 5. Selective eventually moved for summary judgment, J.A. 288, which the district court granted on August 11, 2023, J.A. 301.

As to the Duffys' first argument, the district court determined that North Carolina law did not require stacking of the policies because the vehicles covered were not "nonfleet private passenger vehicles." J.A. 306–11. The district court noted that the policy was specifically purchased for the Duffys' landscaping business—Lawn Etc.—and covered seven vehicles related to that business, including four pickup trucks and three trailers. *See* J.A. 149. North Carolina law considers insurance coverage to be "fleet" if—as the court found here—it covers more than five vehicles related to a business use. J.A. 307–08. The district court also determined that the vehicles were not "private passenger vehicles" under North Carolina law because they were "used for the delivery or transportation of goods for Lawn Etc. – they are trucks covered by a 'Business Automobile Coverage' insurance policy, and they are the types of vehicles used in such businesses." J.A. 309. The court also explained that North Carolina law looks to the vehicles covered by the policy for this determination, not the vehicle that the insured was using at the time of the accident. J.A. 310–11.

Next, the court applied the Selective policy's terms. As discussed, the contract states that Selective will pay no more than the "limit of Uninsured Motorists Coverage

5

shown in the declarations," J.A. 152, which is defined as $1,000,000 per "accident,"[1] J.A. 149, 151. The $1,000,000 limitation applies "[r]egardless of the number of covered 'autos', 'insureds', premiums paid, claims made, or vehicles involved in the 'accident.'" J.A. 152. And as also discussed, the policy's "other insurance" provision limits the "maximum recovery under all coverage forms or policies combined" to the "highest applicable limit . . . under any coverage form." J.A. 152. "[T]he highest applicable limit for any one vehicle under any coverage form or policy" providing coverage to the Duffys in connection with the accident is Selective UIM coverage limit of $1,000,000. J.A. 302.

Based on these contractual terms, the district court found that the policy provided a $1,000,000 per-accident limit. As noted, the cap in the contract applies no matter the number of "insureds" involved in the accident and plainly contemplates multiple insured individuals suffering harm. *See* J.A. 313–14. Thus, the district court rejected the Duffys' argument that each of them should benefit from a separate $1,000,000 cap. J.A. 313. The district court also applied the "other insurance" provision, which limited the "maximum recovery" to $1,000,000 across all UIM coverage. J.A. 316.

As a result, the district court found that Selective's "total combined responsibility to [the Duffys] under the Selective policy is, collectively, $300,000" and granted Selective's motion for summary judgment. J.A. 318.[2] The Duffys timely appealed.

---

[1] The policy defines "Accident" as the "continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage'." J.A. 164.

[2] The district court also granted default judgment against Lawn Etc., but that issue is not on appeal. J.A. 317–18; *see also* J.A. 321.

6

## II.

Sitting in diversity jurisdiction, we apply North Carolina substantive law and federal procedural law. *See, e.g.*, *Small v. WellDyne, Inc.*, 927 F.3d 169, 173 n.3 (4th Cir. 2019); 28 U.S.C. § 1332. We review the district court's grant of summary judgment de novo. *Variety Stores v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). "Summary judgment is appropriate if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Small*, 927 F.3d at 173 (citing Fed. R. Civ. P. 56(a) and *Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986)). All evidence should be viewed in the light most favorable to the non-moving party, as the judge's role is only to determine if "there is a genuine issue of fact for trial." *Id*.

## III.

The Duffys argue that the district court made several legal errors requiring reversal. First, they argue that the district court erred when it found that North Carolina's prohibition on anti-stacking provisions did not apply to their insurance policy with Selective. Next, they argue that the district court weighed evidence in making underlying determinations as to disputed facts. Lastly, they argue that the Selective policy still provides for a $1,000,000 recovery even if the coverage maximums cannot be stacked across policies. We find that none of these arguments have merit and therefore affirm the district court's grant of summary judgment to Selective.

7

A.

The Duffys' initial objection to the application of the coverage maximum stems from the North Carolina Motor Vehicle Safety and Financial Responsibility Act ("FRA"). Under the FRA, provisions that reduce insurance payouts based on the amount paid out by other policies are sometimes prohibited. Specifically, the statute provides that the limit of underinsured motorist coverage is "determined by combining the highest limit available under each policy," N.C. Gen. Stat. § 20-279.21(b)(4), resulting in so-called "stacking" of coverage provided by multiple polices.[3]

However, not all insurance policies are subject to this requirement. Rather, the provision "appl[ies] *only* to insurance on nonfleet private passenger motor vehicles as described in [N.C. Gen. Stat. §] 58-40-15(9) and (10)." *Id*. (emphasis added). Thus, we must determine whether the Duffys' policy constitutes insurance on vehicles that are both (1) nonfleet and (2) private passenger motor vehicles.

Under North Carolina law, a vehicle is "nonfleet" if it "is one of four or fewer motor vehicles hired under a long-term contract or owned by the insured named in the policy." N.C. Gen. Stat. § 58-40-10(2). In determining whether a vehicle is "nonfleet," North Carolina courts are split on whether the raw number of vehicles is dispositive or if the vehicles must meet both a numerosity *and* business use requirement. *See, e.g.*, *Hlasnick v.*

---

[3] The North Carolina General Assembly has amended this provision since this case was filed. *See* Act of Sept. 11, 2023, § 12(d), N.C. Sess. Laws 2023-133, at 18–21; Act of July 2, 2024, § 8(a), N.C. Sess. Laws 2024-29, at 8–11. The amendments do not apply to the Duffys' policy. *See* N.C. Sess. Laws 2024-29 § 8(c), at 13 (amending N.C. Sess. Laws 2023-133 § 12(*i*)). We express no opinion on how the outcome of this appeal would change if they did.

8

*Federated Mut. Ins. Co.*, 524 S.E.2d 386, 389 (N.C. Ct. App. 2000) ("There is no dispute that Federated Mutual's policy insured more than four vehicles; therefore, the policy is a fleet policy."); *Aetna Cas. & Sur. Co. v. Fields*, 414 S.E.2d 69, 71 (N.C. Ct. App. 1992) (holding coverage was "by definition nonfleet" because Aetna's "policy afforded coverage for only four vans."); *compare McCaskill v. Pa. Nat. Mut. Cas. Ins. Co.*, 454 S.E.2d 842, 844 (N.C. Ct. App. 1995) (holding a five-vehicle policy was "nonfleet" because "the . . . vehicles were not used for the insured's business."). However, all courts agree that coverage for at least five commercial vehicles is fleet coverage. *See McCaskill*, 454 S.E.2d at 844–45 (citing N.C. Gen. Stat. §§ 20-279.21(b)(4), 58-40-10(2)).

Here, the policy covers seven vehicles used by the Duffys in their business: four trucks and three trailers. J.A. 149. North Carolina defines "motor vehicle" as "[e]very vehicle which is self-propelled and every vehicle designed to run upon the highways which is pulled by a self-propelled vehicle." N.C. Gen. Stat. § 20-4.01(23). The four trucks are self-propelled vehicles, and the three trailers are "vehicles designed to run upon the highways which [are] pulled by a self-propelled vehicle." *Id*. While the Duffys note that premiums are only shown in the declarations for three of the seven vehicles, J.A. 149, the statutory definition for nonfleet relates to the number of vehicles "owned by the insured," not the number to which premiums attach, N.C. Gen. Stat. § 58-40-10(2).

Because the policy covers seven vehicles, the question turns to whether these vehicles were used for commercial purposes. On appeal, the Duffys assert that the district court improperly made factual determinations about the commercial nature of these vehicles. The Duffys point to *Erwin v. Tweed*, where the North Carolina Court of Appeals

9

held that there were genuine issues of fact as to whether a dump truck was a private passenger motor vehicle.[4]  Opening Br. 14 (citing 544 S.E.2d 803 (N.C. Ct. App. 2001)). As the *Erwin* court explained,

> [The] Farm Bureau and plaintiff dispute the characteristics and weight of this truck.  There is no information of record which determines conclusively the manufacturer's weight of this truck.  Since the manufacturer's weight of this truck determines whether it is considered a private passenger vehicle or a fleet vehicle, we hold that there is a genuine issue of material fact as to the whether the policy covering this International dump truck can be stacked with the other policies . . . . Summary judgment on this issue is inappropriate and is reversed.

*Id.* at 806–07.

This case has a key distinction:  the Duffys do not dispute any characteristics of the vehicles.  While arguing that the vehicles are not private passenger vehicles, the Duffys' provide no evidence nor even an assertion that the vehicles are not used for commercial purposes.  If any of these vehicles were private passenger vehicles, rather than commercial vehicles, the Duffys should have proffered evidence to that effect.  Because the underlying characteristics of the vehicles were not disputed, the district court correctly applied the undisputed facts on summary judgment to reach the relevant disputed *legal* conclusion.

Further, the district court relied on undisputed evidence that indicates these vehicles have a commercial, rather than personal, use.  The district court noted that the vehicles "are

---

[4] Because Rule 56 "answers the question" that the parties dispute—whether or not to grant summary judgment—North Carolina caselaw on this procedural question is not dispositive. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010); *see Archer Daniels Midland Co. v. Brunswick County*, 129 F. App'x 16, 23 (4th Cir. 2005); *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990) (Easterbrook, J.).  But because the parties rely on North Carolina cases throughout, we address them when necessary.

trucks covered by a 'Business Automobile Coverage' insurance policy, and they are the types of vehicles used in [landscaping] businesses." J.A. 309. The court also determined the vehicle weight and class using the vehicles' identification numbers ("VINs"), information that the Duffys do not contest but object to entirely on procedural grounds. *See* Opening Br. 15–16. Without a forecast of evidence—let alone a declaration from one of the Duffys—creating a dispute of fact as to a private use for these vehicles, the district court could properly grant summary judgment.

The fact that the policy is fleet coverage would be enough on its own to defeat application of the N.C. Gen. Stat. § 20-279.21(b)(4). However, the policy *also* is not subject to the anti-stacking provision because the covered vehicles are not of the "private passenger" type. Under North Carolina law,

> '[p]rivate passenger motor vehicle' means . . . [a] motor vehicle that is a *pickup truck or van* that is owned by an individual or by husband and wife or individuals who are residents of the same household if it
>
> > 1. Has a gross vehicle weight as specified by the manufacturer of less than 14,000 pounds; and
> >
> > 2. Is *not used for the delivery or transportation of goods or materials* unless such use is (i) incidental to the insured's business of installing, maintaining, or repairing furnishings or equipment, or (ii) for farming or ranching[.]

N.C. Gen. Stat. § 58-40-10(1)(b) (emphasis added).

As the district court reasonably inferred, and the Duffys provided no evidence to dispute, all seven vehicles are used for the delivery or transportation of goods for their business. They are trucks covered by a "Business Automobile Coverage" insurance policy, and "they are the types of vehicles used in such businesses." J.A. 309. North Carolina

courts have found that a vehicle is not a private passenger vehicle if "its use was commercial." *Fields*, 414 S.E.2d at 72; *see also Nationwide Mut. Ins. Co. v. Mabe*, 467 S.E.2d 34, 45 (N.C. 1996) ("[I]n determining what the legislature intended when defining 'private passenger motor vehicle,' common sense tells us that the legislature was referring to vehicles used every day by the citizens of this State."). As such, the commercial nature of these vehicles is dispositive.

Here, of the seven vehicles owned by the Duffys, "three (the trailers) are not pickup trucks, vans, sedans, or motorcycles." J.A. 309. And while the district court noted that "[o]f the four remaining trucks, three appear to weigh less than 14,000 pounds according to VIN data available from the National Highway Traffic Safety Administration," *id*. (citing J.A. 149), "of those, only one is classified as a 'Pickup' (the other two vehicles are 'Incomplete Vehicle[s],' not pickup trucks)," *id*. (citing *Mabe*, 467 S.E.2d at 45 (describing "having a pickup body" as a threshold test that a truck "typically sold without any type of bed on the vehicle" would fail)); *see also Integon Nat. Ins. Co. v. Sechrist*, 708 S.E.2d 216, 2011 WL 378784, at *3 (N.C. Ct. App. 2011) (Table) ("[T]he vehicles are both dump trucks, each weighing over 10,000 pounds. Accordingly, . . . the two dump trucks covered by the Business Auto Policy are not 'private passenger vehicle[s.]'"). Thus, only the pickup truck, if not used for commercial purposes, could qualify as a private passenger vehicle. But the Duffys provide no evidence or even an allegation that the truck has a noncommercial use.

We agree with the court below that the covered vehicles here are neither non-fleet nor private passenger motor vehicles. Thus, we apply the contract's terms.

12

B.

In interpreting the language of an insurance policy, North Carolina courts "enforce the policy as written." *Mabe*, 467 S.E.2d at 40. But there is a twist. Unlike traditional contract interpretation, if the language of the policy is ambiguous, then "the doubts will be resolved against the insurance company and in favor of the policyholder." *Woods v. Nationwide Mut. Ins. Co.*, 246 S.E.2d 773, 777 (N.C. 1978). However, when a policy is clear, courts must "not remake the policy under the guise of interpreting an ambiguous provision." *Mabe*, 467 S.E.2d at 40; *see also Lanning v. Allstate Ins. Co.*, 420 S.E.2d 180, 185 (N.C. 1992) (concluding that where the FRA neither required nor prohibited intrapolicy stacking, policy language that was "clear, and capable of but one reasonable interpretation" controlled the outcome).

The contract at issue here provides that Selective will pay no more than the "limit of Uninsured Motorists Coverage shown in the Declarations," J.A. 152, which is defined as $1,000,000 per "[a]ccident." J.A. 149, 151. The $1,000,000 limitation applies "[r]egardless of the number of covered 'autos', '*insureds*', premiums paid, claims made, or vehicles involved in the 'accident.'" J.A. 152 (emphasis added).

Because the Duffys' damages exceeded $1,000,000, the full per-accident coverage is exhausted. Selective did not dispute this and found the Duffys entitled to $1,000,000, subject to the deduction of payouts from other insurance providers. This yielded a payment of $300,000, but the Duffys assert that they are entitled to a full $1,000,000 from Selective.

They first argue that the per-accident cap should apply separately to each claimant: in this case, that would mean they each would have up to $1,000,000 in coverage. The

Duffys cite *N.C. Farm Bureau v. Dana*, 866 S.E.2d 710 (N.C. 2021), for this proposition, Opening Br. 12–13, but it is unclear how, if at all, that case yields their desired result. In *Dana*, the Supreme Court of North Carolina confronted an insurance policy with both per-person and per-accident caps. 866 S.E.2d at 716. The per-accident cap was $300,000, while the per-person coverage was only $100,000. *Id*. at 715. Based on the injuries of two claimants, the insurer set the maximum payment at $200,000 and then applied the deduction for the contributions of other insurance. *Id.* at 713. The Supreme Court of North Carolina disagreed, finding that the deduction must be applied to the per-accident cap first, with the per-person cap being applied if the remaining coverage per-person exceeds $100,000. *Id*. at 719.

Here, there is no "per-person" cap in dispute. The contract instead only has a single per-accident cap that explicitly applies "[r]egardless of the number of covered 'autos', '*insureds*', premiums paid, claims made, or vehicles involved in the 'accident.'" J.A. 152 (emphasis added). Many insurance contracts are lengthy, filled with convoluted terminology and legal jargon that would be quite difficult for a layperson to understand. But it is hard to imagine a clearer phrasing of a per-accident coverage limitation than that provided here.[5]

---

[5] The Duffys also ignore cases that support Selective's reading of the contract. *See* Response Br. 14–15. For example, the North Carolina Court of Appeals reversed a trial court's application of the exact method advocated for by the Duffys as legal error. *Nationwide Mut. Ins. Co. v. Haight*, 566 S.E.2d 835, 837 (N.C. Ct. App. 2002) ("Because the [] policy sets only one 'combined single limit' of $500,000 on its UIM coverage, rather than a per-person limit, we do not believe this method of computing the offset is consistent with the statute as applied to this policy."). The court emphasized that the proper (Continued)

On appeal, the Duffys offer a new contractual interpretation seeking the same result. They assert that the severability of interests clause in the contract requires us to reinterpret the per-accident limitation language as applying separately to each of the Duffys. Even if this argument were not forfeited for not having been raised below, we disagree.

The Duffys cling to one sentence in the definitions section of the contract that states: "[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage." J.A. 165; Opening Br. 17. To the Duffys, this means that the per-accident cap applies separately to each insured.[6]

Seeming to acknowledge the contortions necessary to adopt this reading of the contract, the Duffys assert that rather than being the only possible reading, that it instead renders the contract ambiguous. Opening Br. 16–17. They then point to the above-mentioned state rule that requires reading ambiguity in favor of the insured. *Id.* at 16 (citing *Register v. White*, 599 S.E.2d 549, 553 (N.C. 2004)).

We cannot agree with the Duffys that the contract here is in any way ambiguous. As we noted above, the per-accident coverage cap is quite clear. Further, as North Carolina

---

calculation is to subtract the payments of other insurers from the per-accident limit, and that the "combined single limit" applied to the entire claim by multiple insureds, not separately to each. *Id*.

[6] In effect, this would create a per-person coverage limitation of $1,000,000, with the per-accident limit only coming into play should the combined individual payouts exceed $1,000,000. As the Duffys explain, they each would have $1,000,000 in coverage, and the $700,000 in payouts from their other insurance plans would be split between them. The resulting combined payouts of $1,300,000 would then be reduced to $1,000,000 under the cap. The Duffys' argument is clever, but the contract plainly does not provide for such a manipulated result.

15

courts have recognized, the severability clause relied upon by the Duffys exists to ensure that if one insured can be denied a payout for some bad faith reason, such as fraud, the other named insured would not lose out on coverage. *See, e.g.*, *Universal Ins. Co. v. Burton Farm Dev. Co.*, *LLC*, 718 S.E.2d 665, 669–70 (N.C. Ct. App. 2011). In our view, the contract's provision for "separate" coverage for each insured is in complete harmony with the per-accident coverage maximum. *See Penske Truck Leasing Co., Ltd. P'ship v. Republic W. Ins. Co.*, 407 F. Supp. 2d 741, 747 (E.D.N.C. 2006) ("[I]f a North Carolina court were confronted with the language of the severability of interests provision . . . that court would attempt to read the policy in a manner that would not render that language superfluous and would read that language in a manner that gave it meaning when construed in the larger context of the policy as a whole."); *Universal Ins. Co.*, 718 S.E.2d at 670 (adopting *Penske*'s reasoning). We cannot find ambiguity where none exists. *Mabe*, 467 S.E.2d at 667.

## IV.

We find that the district court properly granted summary judgment to Selective Insurance. Based on the pleadings and undisputed factual contentions, the court properly determined that the policy before us does not cover nonfleet private passenger motor vehicles. Further, we agree that the policy unambiguously caps coverage at $1,000,000 per-accident, regardless of the number of insureds. As our dear colleague aptly noted not long ago, "[w]e do not overlook for a moment the tragic" injuries and suffering of the insureds, "but neither can we ignore the contract under" North Carolina law "that defines

16

the insurer's obligation." *Owners Ins. Co. v. Walsh*, 134 F.4th 776, 782 (4th Cir. 2025).

Thus, the judgment of the district court is

*AFFIRMED.*

17